UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re APPLICATION OF:<br><br>FOOD DELIVERY HOLDING 12 S.A.R.L.,<br><br>Applicant,<br><br>v.<br><br>DEWITTY AND ASSOCIATES CHTD,<br><br>Respondent. | Miscellaneous Case No.<br>1:21-mc-0005 (GMH) |

## MEMORANDUM OPINION

Food Delivery Holding 12 S.a.r.l. ("FDH") has filed an application for an order pursuant to 28 U.S.C. § 1782 to issue a subpoena for the taking of a deposition and the production of documents for use in an international arbitration before the Dubai International Finance Centre–London Court of International Arbitration ("DIFC-LCIA"). The target of the subpoena is a local law firm, Respondent DeWitty & Associates CHTD ("DeWitty").[1] For the reasons that follow, the motion is granted.[2]

---

[1] The relevant docket entries for resolution of these requests are (1) FDH's application for an order pursuant to section 1782 (ECF No. 1); (2) FDH's motion to seal, which includes, under seal, its memorandum in support of the section 1782 application and its exhibits (ECF No. 2); (3) DeWitty's response to the Court's Order to Show Cause why FDH's applications should not be granted (ECF No. 11); (4) FDH's reply to DeWitty's response (ECF No. 13); (5) FDH's supplemental memorandum (ECF No. 16); and (6) DeWitty's surreply (ECF No. 17).

[2] "Since the Court's decision on a Section 1782 application is non-dispositive, it may be decided by a magistrate judge by opinion and order, rather than a report and recommendation to the district court." *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301 (S.D.N.Y. 2020) (citing *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) ("This Court agrees with the majority of courts finding that rulings on § 1782 applications are *not* dispositive.")), *adhered to on reconsideration sub nom. In re Pishevar*, No. 1:19-mc-503, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020); *see also In re Pons*, __ F. Supp. 3d __, __, 2020 WL 1860908, at *3 (S.D. Fla. 2020) (noting that "[t]he great majority of courts

I.     BACKGROUND

The arbitration underlying this application concerns a company called Hungerstation[3]—a Saudi Arabian online and app-based food delivery service founded by Ebrahim Al-Jassim and for which he served as CEO—and a shareholder's agreement among Hungerstation; FDH, Hungerstation's majority shareholder; and Mr. Al-Jassim, Hungerstation's minority shareholder. ECF No. 2-5 at 5–8. In May 2019, pursuant to the arbitration provision in the shareholder's agreement, Mr. Al-Jassim alleged before the DIFC-LCIA that FDH had breached the shareholder's agreement in multiple ways, including by allowing FDH's parent company, Delivery Hero, to "improperly intervene in and/or manage the affairs of [Hungerstation]"; terminating Mr. Al-Jassim's employment with Hungerstation; and sharing confidential Hungerstation information with its competitors. *Id.* at 19–21.

FDH has interposed counterclaims in that arbitration alleging, among other things, that Mr. Al-Jassim and others employed by Hungerstation used the company's "assets and personnel to establish and develop competing companies in the [Kingdom of Saudi Arabia,] which . . . [were] used to skim untold profits out of [Hungerstation] in violation of the [shareholder's agreement]." ECF No. 2-4 at 7. More specifically, FDH asserts that, when Mr. Al-Jassim was CEO of Hungerstation, he used the company's assets and personnel to develop a "new logistics app and platform" to manage the food deliverers, known as riders, and, once that app was completed, transferred the app, the rider database, and Hungerstation personnel to a company he had created (and served as CEO for) called Fast Choice LLC, which does business under the name Pace. *Id.* at 9 (internal

---

to address the issue" have determined that a magistrate judge may dispose of "Section 1782 discovery motions" by order rather than by report and recommendation and collecting cases).

[3] Hungerstation, LLC, which is the sole and wholly-owned subsidiary of Hungerstation SPC Ltd., is known in some of the papers as "OpCo" or "the OpCo," presumably because it is the company that operates the Hungerstation app and online platform. ECF No. 2-4 at 7; ECF No. 2-5 at 7–8. For the purposes of this decision, the Court need not distinguish among the parent, the subsidiary, and the app/platform, and therefore refers to all three as "Hungerstation."

quotation marks omitted); *see also id.* at 161–64.  He then allegedly ensured that all of Hungerstation's deliveries were made by Pace, which charged a "heavily inflated 'Cost Per Order,' stripping profits out of [Hungerstation] and siphoning them to Pace."  *Id.* at 9; *see also id.* at 350–53.  According to FDH, Mr. Al-Jassim continues to hold an indirect financial stake in Pace through his cousin.  *Id.* at 259.  Mr. Al-Jassim denies both that he is employed by or otherwise involved in the management of Pace and that he has any financial stake, whether direct or indirect, in Pace.  ECF No. 2-7 at 61.

Meanwhile, in September 2019, Hungerstation filed an action in the U.S. District Court for the Northern District of California against Pace alleging misappropriation of trade secrets, computer fraud, and other causes of action.  *See* ECF No. 1-8; ECF No. 2-4 at 254–55; *see generally Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-5861, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020).  The district court dismissed the case for lack of personal jurisdiction over Pace, *see Hungerstation*, 2020 WL 137160, at *1, the plaintiff appealed (ECF No. 1-9), and the Ninth Circuit affirmed (*Hungerstation LLC v. Fast Choice LLC*, __ F. App'x __, 2021 WL 1697886 (9th Cir. 2021).  DeWitty represented Pace in the district court and the Ninth Circuit.  ECF No. 1-8; ECF No. 1-9.  Additionally, Hungerstation filed successful takedown requests with Apple and Google seeking removal of the Pace app from their app stores as infringing on Hungerstation's copyrighted source code.  ECF No. 2-4 at 252–54.  FDH alleges that DeWitty represented Pace in those takedown proceedings.  ECF No. 2-2 at 11.

Prior to filing its application with this Court, FDH, through counsel, sought to obtain, informally, from DeWitty:

> any written communication between [DeWitty's principal, Robert DeWitty] and/or personnel associated with [DeWitty] and Mr. Al-Jassim (or any of his representatives, including but not limited to his personal lawyer and proxy Mr. Patrick Rogers

3

as well as anyone from Mr. Rogers' law firm Support Legal in Abu Dhabi, United
Arab Emirates) related to [DeWitty's] ongoing representation of Pace.

ECF No. 2-8 at 2–3. Mr. DeWitty responded that "any discussions [he] held with [Pace] and associated officials were on the basis of legal representation" and thus privileged. ECF No. 2-9 at 2. Counsel for FDH responded that he was "not suggesting that [Mr. DeWitty] waive the attorney-client privilege," but rather sought "only [ ] the firm's communications with . . . Mr. Ebrahim Al-Jassim, not with [Pace]." ECF No. 2-10 at 2. He continued that, if it was Mr. DeWitty's position that all of his communications with Mr. Al-Jassim were privileged, "[t]he issue . . . then would be whether to seek a subpoena and insist on a privilege log." *Id.* Mr. DeWitty did not respond.

FDH filed its application in this Court in January 2021 seeking the issuance of a subpoena against DeWitty, and served it on DeWitty. ECF No. 1; ECF No. 3. The proposed subpoena seeks from DeWitty such things as correspondence between the law firm and Mr. Al-Jassim related to the takedown proceedings, to Northern District of California proceedings, and to Ninth Circuit proceedings; documents executed by Mr. Al-Jassim, provided by the firm to Mr. Al-Jassim, or provided by Mr. Al-Jassim to the firm related to the formation or operation of Pace; communications between the firm and Mr. Al-Jassim reflecting Mr. Al-Jassim's financial interest in Pace or participation in any decision-making on behalf of Pace; and agreements between the firm and Mr. Al-Jassim related to the firm's representation of Pace. ECF No. 2-3 at 13–14. The subpoena also seeks communications and documents exchanged between DeWitty and Support Legal. *Id.* at 14–15. It further seeks to depose DeWitty on similar topics. *Id.* at 15–16.

DeWitty failed to oppose the application or its accompanying motion to seal within two weeks of being served, as required by Local Civil Rule 7(b). The Court therefore issued an Order requiring DeWitty to show cause why FDH's "application for an order under 28 U.S.C. § 1782 to issue the proposed subpoena and/or [FDH's] motion to seal should not be granted." ECF No. 8 at

4

1–2.  DeWitty timely filed its response, which asserts that, DeWitty's principal, Robert DeWitty, through his representation of Pace, "has attorney-client privileged information that is simultaneously related to Mr. Al-Jassim and Pace" and argues that the subpoena should not be issued because it seeks production of "attorney-client and privileged communications which cover 1) litigation strategy, 2) attorney though[t] processes, 3) attorney work product, 4) observations about the parties, the law firms, and the Judges involved, 5) motions strategies, and 6) confidential client information" ECF No. 11 at 2–3.  He further affirmed that he "did not play a role in any takedown proceedings relating to Pace and third-party server operations."  ECF No. 11-4 at 1.

FDH responded that DeWitty's blanket assertion of privilege is both premature and that it fails to properly allege that all responsive documents or communications would be privileged because it does not establish that such material comprised "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services" or "communications from attorneys to their clients" that "rest on confidential information obtained from the client." ECF No. 13 at 4 (quoting *Tousari v. DOJ*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015)).  Therefore, "[o]nly a document-by-document claim of privilege will allow FDH meaningfully to dispute the existence of any privilege, or to show a waiver or other exception."  ECF No. 13 at 4.  The Court held a hearing with the parties on the issue of DeWitty's privilege assertion on May 7, 2021.  Notably, at that hearing, FDH agreed to narrow its request to the following:  all communications or records involving Mr. Al-Jassim, his counsel, Patrick Rogers, and/or Support Legal, Mr. Rogers' law firm.

## II.   DISCUSSION

A two-stage inquiry informs whether a federal court will grant a motion under section 1782.  First, the court must determine whether it *can* order the requested relief—that is, whether it has

5

the authority to do so; second, it must decide whether it *should* order the requested relief—that is, whether exercising its discretion to do so would further the statue's "twin aims of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance in our courts.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252, 255 (2004) (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

As to the first step, "[a] district court has the authority to grant an application when . . . (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (citing 28 U.S.C. § 1782(a)). The second step is informed by the following four factors outlined in *Intel*: (1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions or other policies," and (4) whether the request is "unduly intrusive or burdensome." *Id.* (quoting *Intel*, 542 U.S. at 264–65). The Court will address each step of the two-step inquiry in turn.

A.  **The Court's Authority to Grant FDH's Application**

As a threshold matter, DeWitty does not argue that this Court does not have the authority to grant FDH's discovery request—that is, DeWitty does not argue that it is not located in this Court's jurisdiction, that the discovery FDH seeks is not for use in a foreign proceeding, or that FDH is not an interested party in that proceeding. *See generally* ECF Nos. 11, 17. Indeed, the first and third factors are easily met here. DeWitty is located in Washington, D.C., so it "is found within th[is] district" and FDH is an interested person because it is a party to the DIFC-LCIA

arbitration, which is the relevant foreign proceeding. ECF No. 2-2 at 13–14; *see Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." (alteration in original)).

The second factor—whether the discovery is for use in a proceeding before a foreign or international tribunal—was not as clearly established by FDH's application. Specifically, FDH's application failed to adequately address the issue of whether the DIFC-LCIA foreign arbitration is properly considered a "foreign or international tribunal." There is currently a Circuit split regarding whether parties to private arbitrations, as opposed to state-sponsored arbitration, are authorized to utilize section 1782 to obtain discovery for use in those proceedings. The Second Circuit has held that they are not. *See In re Guo*, 965 F.3d 96, 104–108 (2d Cir. 2020). The Seventh Circuit and the Fifth Circuit agree. *See Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 690 (7th Cir. 2020) ("[W]e join the Second and Fifth Circuits in concluding that § 1782(a) does not authorize the district courts to compel discovery for use in private foreign arbitrations."); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999); *see also In re Storag Etzel GmbH*, No. 19-mc-209, 2020 WL 1849714, at *3 (S.D. Fla. Apr. 3, 2020) ("In conclusion, although not without doubt, I find that the term 'tribunal' in § 1782(a) does not encompass private arbitral bodies. Accordingly, Storag has failed to meet the statutory requirements of § 1782(a) and I will deny its application."). The Sixth Circuit disagrees. *See In re Application to Obtain Discovery for use in Foreign Proceedings*, 939 F.3d 710 (6th Cir. 2019) (holding that a private arbitration constituted a foreign or international tribunal).[4] The D.C. Circuit does not appear to have weighed in on this issue. Accordingly, the Court must determine whether the DIFC-LCIA is properly considered a

---

[4] The Sixth Circuit appeared to assume that arbitration before the DIFC-LCIA was private, rather than state-sponsored arbitration. *See generally In re Application*, 939 F.3d 710. It does not appear that either party challenged that assumption, so the issue before this Court—whether arbitration before the DIFC-LCIA is private or state-sponsored—was not considered in the Sixth Circuit's opinion. *Id.*

7

private or state-sponsored arbitral tribunal. If the Court determines that the DFIC-LCIA is a private arbitral tribunal, then the Court must further decide whether section 1782 extends to private arbitration. Because FDH failed to address this question in any depth, the Court ordered the parties to submit supplemental briefs on the issue. ECF No. 15.

FDH argues in its supplemental brief that this Court need not pick a side of the Circuit split because the DIFC-LCIA arbitration in Dubai is not private, but instead is state-sponsored. ECF No. 16 at 11. Thus, FDH argues that section 1782 authorizes discovery for use in the DIFC-LCIA arbitration even under the narrower interpretations of the Second, Fifth, and Seventh Circuits. ECF No. 16 at 9. DeWitty filed a supplemental brief, reiterating its claims of attorney-client privilege, but did not address the issue of whether the DIFC-LCIA is a proceeding for which section 1782 authorizes discovery, as it was directed to do. *See* ECF No. 17. Upon review of FDH's supplemental brief, the undersigned finds that, as with the first and third factors, FDH has satisfied the second, and final, factor necessary for determining whether the Court has the authority to grant its application under section 1782.

Determining whether an arbitral body is state-sponsored or private is not always clear. Two cases are instructive for the analysis here. In *In re Guo*, the Second Circuit considered whether the China International Economic and Trade Arbitration Commission ("CIETAC") was a state-sanctioned or private tribunal. 965 F.3d at 107–08. The court noted that a single factor does not make a tribunal state-sanctioned or private, but instead considered the degree of state affiliation, the degree of state authority to intervene in arbitration, and the jurisdiction of the arbitral panel. *Id.* at 107–08. The court concluded its analysis by finding that the CIETAC, although "originally created through state action," had "subsequently evolved" and "no longer qualifie[d] as

8

a . . . 'state-sponsored adjudicatory bod[y]'" because there was no affiliation with the Chinese government, the ability of the government and courts to intervene in the arbitration was limited, and the jurisdiction of the arbitral panel was created solely by parties' agreements. *Id.* at 107–08 (last alteration in original). In a similar analysis, the Fourth Circuit considered whether an arbitration panel in the United Kingdom was state-sponsored or private for the purposes of a section 1782 application. *Servotronics v. Boeing Co.*, 954 F.3d 209, 214 (4th Cir. 2020). The court first noted that the arbitration at issue was governed by the U.K. Arbitration Act, which "provides a comprehensive regulation of arbitration and its procedures." *Id.* The court also considered certain specific regulations, such as courts' ability to stay legal proceedings in favor of arbitration, remove an arbitrator, determine questions of law raised during arbitration, and review arbitration awards. *Id.* Based on those laws and regulations, the Fourth Circuit concluded that the arbitration was "sanctioned, regulated, and overseen by the [U.K.] government and its courts" and therefore "a product of 'government-conferred authority[ ]' under UK law." *Id.* at 214. Accordingly, the Fourth Circuit found that even under "the more restrictive definition of 'foreign or international tribunal' adopted by [the Second and Fifth Circuits] . . .—that the term refers only to 'entities acting with the authority of the State'—[they] would conclude that the UK arbitral panel . . . meets that definition." *Id.* at 214.

So too here. The DIFC-LCIA is a joint venture of the Dubai International Financial Center and the London Court of International Arbitration. ECF No. 16 at 11–12. The DIFC itself was established by a United Arab Emirates decree. *Id.* The Arbitration Institute, which is part of the DIFC, was created by statute, is funded by the Dubai government, and is governed by a board of trustees appointed by the Dispute Resolution Authority, one of the three "pillars" of the DIFC. *Id.*

9

at 11–12. The DIFC's Arbitration Institute staffs the DIFC-LCIA, including legal counsel, casework managers and administrators, and office managers. *Id.* Additionally, UAE courts have the authority under the UAE's Federal Arbitration Law to appoint arbitrators, adjudicate arbitration issues, including jurisdictional determinations and procedural issues, and can assist in taking evidence and intervening to ensure the compliance of defiant parties. *Id.* at 13. Like the arbitration in the Fourth Circuit's *Servotronics* case, all of this suggests that the DIFC-LCIA in Dubai is "sanctioned, regulated, and overseen by" the UAE government, making it a "foreign or international tribunal" even under the narrower definitions adopted by the Second, Fifth, and Seventh Circuits. *Id.*

Accordingly, the Court has the authority to grant FDH's discovery request and the remaining analysis will focus on whether it should exercise its discretion to grant FDH's application.

### B.  Whether the Court Should Grant FDH's Request

FDH asserts that the four *Intel* factors counsel in favor of its application, arguing that (1) DeWitty is not a participant in the DIFC-LCIA arbitration and thus is beyond the reach of the tribunal, (2) section 1782 is routinely used for discovery in aid of foreign or international arbitration, (3) the DIFC-LCIA Arbitration Rules do not prohibit evidence gathering under section 1782, and (4) its application is not unduly intrusive or burdensome because the documents sought are within DeWitty's control and its request is narrowly tailored. ECF No. 2-2 at 14–16. In response, DeWitty engages neither FDH's arguments nor the *Intel* factors. Instead, DeWitty argues that FDH's application should be denied because the information it seeks is protected by the attorney-client privilege. *See generally* ECF Nos. 11, 17. For the reasons that follow, the Court finds that the four *Intel* factors weigh in favor of granting FDH's application and will permit FDH to seek

10

discovery from DeWitty, subject to any specific claims of privilege detailed in a privilege log produced by DeWitty.

### 1. The Jurisdictional Reach of the DIFC-LCIA

The first discretionary *Intel* factor—whether the person or entity from whom discovery is sought is a participant in the foreign proceedings—weighs in favor of granting FDH's application. *Intel*, 542 U.S. at 264. DeWitty is not a party in the foreign proceedings. So, there is no reason to believe that DeWitty is within the jurisdictional reach of the DIFC-LCIA, or even the UAE courts, which are empowered to assist the DIFC-LCIA when parties are defiant. *See Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [section] 1782(a) aid." (internal citations omitted)). Accordingly, this first *Intel* factor weighs in favor of granting FDH's application.

### 2. The Nature and Receptivity of the Foreign Tribunal and Character of the Proceedings

The next *Intel* factor calls for an assessment of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264. To prevail on this factor, "[t]he party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought." *In re Veiga*, 746 F. Supp. 2d at 23–24 (quoting *In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010)). As noted, DeWitty did not mention the *Intel* factors let alone argue that the DIFC-LCIA would reject the evidence FDH seeks here. *See generally* ECF Nos. 11, 17. Regarding the nature of the foreign tribunal and the character of the proceedings, FDH notes that courts have routinely granted section

11

1782 applications in aid of foreign arbitration proceedings. *See* ECF No. 2-2 at 15. In contrast, DeWitty, again, has provided nothing to suggest the nature and character of the DIFC-LCIA proceedings would weigh against granting FDH's application. *See, e.g.*, *In re Barnwell Enters.*, 265 F. Supp. 3d 1, 11–12 (D.D.C. 2017) (providing examples where nature and character would weigh against granting a section 1782 application, such as where the proceedings are the type that would otherwise bar the petitioner from presenting evidence and engaging in discovery, or where the proceedings involved "bargained-for expectations" setting procedural and discovery rules for the proceeding). Accordingly, the Court finds that this *Intel* factor weighs in favor of granting FDH's application.

### 3. Circumvention of Foreign Proof-Gathering Restrictions or Other Foreign Policies

The next *Intel* factor instructs the Court to consider whether FDH's section 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. FDH explains that the DIFC-LCIA Arbitration Rules "[do not] prohibit[ ] the gathering of evidence via Section 1782, and the arbitral tribunal has given no indication that it would not be receptive to evidence obtained under U.S. law." ECF No. 2-2- at 15–16 (italics omitted). Nor could the undersigned find anything in the DIFC-LCIA's rules suggesting FDH's application would circumvent any rule or policy governing the proceedings. DeWitty also does not argue that FDH is attempting to circumvent any law or policy of the UAE or the DIFC-LCIA governing evidence. *See generally* ECF Nos. 11, 17. Absent any argument from DeWitty on this factor, the Court has no reason to believe FDH is doing anything other than seeking to obtain discovery in the possession of a non-party located in the District of Columbia to use in a foreign proceeding. Accordingly, this *Intel* factor weighs in favor of granting FDH's application.

### 4. The Scope of Petitioners' Discovery Request

The final *Intel* factor provides that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. Recall that, at the May 7, 2021 hearing, FDH agreed to narrow its request to the following: all communications or records involving Mr. Al-Jassim, his counsel, Patrick Rogers, and/or Support Legal, Mr. Rogers' law firm. At the hearing, DeWitty maintained his assertion of attorney-client privilege and FDH maintained that DeWitty must produce a privilege log to support such assertions. Courts have considered the necessity of creating a privilege log as part of an "undue burden" analysis under *Intel*. For example, in *In re Application for an Order Pursuant to 28 U.S.C. § 1782*, this Court concluded that attorney-client privilege was properly asserted as a defense against a section 1782 application where the documents sought "were framed precisely to cover such privileged communications and documents" because "the discovery request [was] predicated on the petitioners' belief that [the party's] counsel was involved in corrupting the administration of justice in [certain] proceedings." 286 F. Supp. 3d 1, 6–7 (D.D.C. 2017). The Court further explained that it would not require a privilege log to justify the assertion of attorney-client privilege because the application sought "documents generated by *over a decade of represent[ation]*," making the creation of a privilege log unduly burdensome. *Id.* at 7–8 (emphasis added). In addition, the Court found that the relevance of the discovery sought to the foreign proceedings was "thin," "tenuous," and of "limited usefulness." *Id.* at 4. Similarly, in *Dell Inc. v. DeCosta*, this Court considered a request directed at former legal counsel for "[a]ll documents . . . that refer or relate to any license, proposed license, settlement agreement, proposed settlement agreement, or negotiations regarding any license or settlement agreement related to the Patents-in-Suit . . . in which any or all of the Counter-Defendants have included or considered

13

including a provision regarding or referencing Dell." 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (alterations in original). The Court found that granting such a request "would impose an undue and disproportionate burden on Defendants to prepare a privilege log of the *thousands* of documents that Defendants would reasonably be expected to 'possess' after a *decade of . . . representation*[,] . . . most of which would be protected by the attorney-client privilege." *Id.* at 3–4 (emphasis added).

Here, although some of the documents FDH seeks from DeWitty may be privileged, DeWitty has not suggested that creation of a privilege log would be unduly burdensome. *See generally* ECF Nos. 11, 17. Indeed, at the hearing, DeWitty stated that he has represented Pace for approximately three years and that the case files that may contain responsive records consist of roughly three folders, with a few hundred documents in each. This case is thus distinguishable from *In re Application* and *Dell*, which both involved a decade or more of representation and thousands of potentially responsive documents. And given that FDH has narrowed its request, it appears to the Court that only a handful of search terms would be necessary to search for responsive electronic documents—"Ebrahim Al-Jassim," "Patrick Rogers," "Support Legal," and various other forms of those names. The Court will not simply assume that creation of a privilege log would be unduly burdensome absent evidence from DeWitty on the issue. In addition, unlike the discovery sought in *In re Application*, which was only tenuously related to the foreign proceedings, the discovery sought here goes to one of the principal issues before the DIFC-LCIA—specifically, whether Mr. Al-Jassim is involved in Pace's management and operation. ECF No. 2-2 at 14. Accordingly, without more than DeWitty's blanket assertion of privilege, the Court cannot find that this *Intel* factor weighs against granting FDH's application or that DeWitty has, at this time, successfully asserted attorney-client privilege. *See In re Veiga*, 746 F. Supp. 2d at 26 (concluding

that "the parties' [ ] arguments concerning privilege [were] premature" and that "[the] [c]ourt simply [was] not in a position to resolve blanket claims of privilege and waiver").

### III.     CONCLUSION

Based on the above, the Court will grant FDH's section 1782 application and instruct DeWitty to comply with FDH's document requests, as narrowed by FDH at the hearing on May 7, 2021. To the extent DeWitty believes that any of the documents sought are protected by the attorney-client privilege, it shall provide a privilege log justifying withholding that information.

For the foregoing reasons, FDH's section 1782 application (ECF No. 1), as narrowed by FDH at the hearing on May 7, 2021, is **GRANTED**. As discussed at the hearing, DeWitty is hereby **ORDERED** to produce any non-privileged responsive documents and a detailed privilege log of any responsive privileged documents to FDH by May 17, 2021.[5] Any deposition of DeWitty shall await further order of the Court.

---

[5] To be clear, the Court does not direct DeWitty to provide anything to FDH that is privileged or that would violate any ethical duty that DeWitty may have to a client. Typically, creation of a privilege log would not raise such concerns. At the hearing, however, FDH stated that its receipt of a privilege log from DeWitty alone may be helpful in its effort before the DIFC-LCIA to show that Mr. Al-Jassim is involved with Pace. To the extent that DeWitty believes that providing a privilege log to FDH may violate an ethical duty to a client, *see, e.g.,* D.C. Rule of Professional Conduct 1.6(a)("[A] lawyer shall not knowingly (1) reveal a confidence or secret of the lawyer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; [or] (3) use a confidence or secret of the lawyer's client for the advantage of . . . a third person."), or may itself disclose privileged material, *see Cause of Action Institute v. DOJ*, 330 F. Supp. 3d 336, 350–51 (D.D.C. 2018) (finding, after *in camera* review, that the identity of a client itself can be privileged where revealing the client's identity would "disclose that the [client] acted on a particular 'motive . . . in seeking representation,'" and would thus shed light on the 'nature of the legal services rendered[,]'" and in turn concluding that otherwise non-confidential documents revealing the client's identity could be withheld) (ellipses in original) (first quoting *United States v. Naegele*, 468 F. Supp. 2d 167, 171 (D.D.C. 2007), then *Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 134 (D.D.C. 2009)); *see also In re Grand Jury Subpoena*, 926 F.2d 1423, 1432 (5th Cir. 1991) (reviewing documents *in camera* and finding that attorney could withhold the identity of his client pursuant to attorney-client privilege where revealing the client's identity would expose the client's confidential motive in hiring the attorney), then DeWitty may file the privilege log on the docket under seal for the Court's *in camera* ex parte review in lieu of providing the log to FDH. If DeWitty does seek the Court's *in camera* ex parte review, it must establish, in writing, that such a review is necessary. If DeWitty does not seek *in camera* review of the privilege log, then it need not file the privilege log on the docket and should instead provide the privilege log directly to FDH.

Date:  May 10, 2021

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE